SHARON L. CEASAR SBN NO. 160869
LAW OFFICE OF SHARON L. CEASAR
1191 Solano Ave. #6573
Albany, CA 94706-9991
Telephone: (510)528-1640
Fax: (510) 898-1940
sharonlceasar@gmail.com
Attorney for Debtor
WAUKEEN McCOY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: WAUKEEN Q. McCOY, | Case No.: 14-30381-HLB |
| | CHAPTER 11 |
| Debtor in Possession, | **DECLARATION OF DEBTOR IN POSSESSION WAUKEEN McCOY IN RESPONSE TO OSC** |
| | Hearing Date: March 12, 2015<br>Time: 10:00 a.m.<br>Place: 235 Pine Street, Courtroom 23<br>Judge: Hon. HANNAH BLUMENSTIEL |

I, Waukeen Q. McCoy, declare as follows:

1.     I have personal knowledge of each fact stated herein and, if sworn as a witness, could testify competently thereto.

2.     Contrary to the Court's OSC, I have not mismanaged the estate. My previous attorney Joseph Angelo and the Sagaria law firm did not provide any direction as to how I was suppose to manage the Estate after the conversion to Chapter 11 on June 5, 2014. I tried to contact Attorney Angelo and was unsuccessful. He never provided me with a direct line to call

him. The Chapter 11 proceeding is unique and as a solo practitioner I have tried my best to meet the Bankruptcy Guidelines as far as I could understand them.

3.     I did not file complete and accurate Monthly Operating statements mentioned in the Order to Show Cause because when they were received from my accountant by email, I mistakenly did not click on all of the bottom tabs of the excel spreadsheet to obtain the complete Monthly Statements. I clicked on the Summary page usually and printed out the Bank Statements provided by my accountant. Mr. Allaband, my accountant, was unaware of my mistake and did not know that I did not send all the documents he prepared on the Monthly Operating Reports. I will file the amended corrected Monthly Operating Statements immediately. I am also providing the following comments for each of the monthly Operating Reports from June 2014-December 2014.

**JUNE 2014 MONTHLY OPERATING REPORT**

4. I have signed the Amended June 2014 Monthly Operating Report. As for retainer Payment to Sean Allaband of $2,000, check no. 1604, I disclosed this fact to my attorney Joseph Angelo. I informed him prior to the filing of the Application for Employment that Sean would be assisting me in preparing income tax returns and bookkeeping and assist in the necessary work associated with the Chapter 11 proceeding, including monthly operating reports (MOR's) and reviewing past filed returns for possible amendments. I was not sure what other obligations I had and trusted that my Attorney Angelo would assist me in providing full disclosure to the Court.

5.     Prior to June 6, 2014, I had been looking to open up a Debtor in Possession Account, but was unsuccessful. I withdrew $4,000 from the Bank of America Account to be used to open up the Debtor In Possession Account. I opened the Debtor In Possession Account with a small amount on July 23, 2014 and made a $4,000.00 deposit on August 18, 2014, which was the amount of the withdrawal.

6.     On June 6, 2014, I was numerous months behind on my office rent. On that day, I obtained three cashier's checks in the amount of $5,000.00 each to CIM my office landlord,

1   which totaled $15,000.00. The Statement identifies the transaction as "withdrawal image." I

2   obtained clarification, and the payee on those checks was CIM.

3        7.    As far as I can recall and from looking at my June 2014, calendar, there was a

4   $500 cash withdrawal made on June 13, 2014, which was used partly for groceries, pet food, and

5   business expenses for the trial of Grant v. BART, et al, Case No. CC09-04014-EMC, which

6   included, but not limited to taking my interns out for lunch daily during the trial that following

7   week.

8        **JULY 2014 OPERATING REPORT**

9        8.    On July 16, 2014, I made a cash withdrawal of $800.00. This withdrawal was for

10  gas, food, lodging, and groceries for a four day business trip to Los Angeles in the B. Scott v.

11  BET case, Superior Court Case No. BC517318.

12       9.    On July 10, 2014, check no. 1599 was payable to Stephanie Zimmerman. I paid

13  Stephanie Zimmerman $700, who was an attorney intern in my office, a stipend for discovery

14  work in the Chloie Jonnson v. Cross Fit case, Case No. CV178788, Superior Court Santa Cruz,

15  for the week June 30, 2014 – July 4, 2014. Ms. Zimmerman also worked on other matters during

16  that period, including, but not limited to organization of files in the office.

17       10.   On July 10, 2014, check no. 1616 was payable to Lindsay McKesson. I paid

18  Lindsay McKesson $700, who was an attorney intern in my office, a stipend for appellate work in

19  the Catherine Fromson v. The Medows, NDCA case, Case No. 13 CV-01294-SC, (Superior

20  Court, Sacramento), for the week June 30, 2014 – July 4, 2014. Ms. McKesson also worked on

21  other matters during that period, including, but not limited to organization of files in the office.

22       11.   On July 25, 2014, check no. 1637 was payable to Lindsay McKesson. I paid

23  Lindsay McKesson $500, who was an attorney intern in my office, a stipend for appellate work in

24  the Catherine Fromson v. The Medows, NDCA case, Case No. 13 CV-01294-SC, (Superior

25  Court, Sacramento), for the week appx. July 21,2014 – July 25, 2014. Ms. McKesson also

26  worked on other matters during that period, including, but not limited to organization of files in

27  the office.

28

DECLARATION OF WAUKEEN Q. McCOY IN RESPONSE TO OSC

1    12.    On July 25, 2014, check no. 1640 was payable to Stephanie Zimmerman.  I paid

2    Stephanie Zimmerman $500, who was an attorney intern in my office, a stipend for discovery

3    work in the Chloie Jonnson v. Cross Fit case, Case No. CV178788, (Superior Court Santa Cruz),

4    for the week appx. July 21, 2014 – July 24, 2014 and pre-trial matters in Oliverez v. County of

5    Sonoma, Case No: CV 13-1918-CRB (ND).  Ms. Zimmerman also worked on other matters

6    during that period, including, but not limited to organization of files in the office.

7                  **AUGUST 2014 MONTHLY OPERATING REPORT**

8        13.    $1,190 was paid for the month of August from the Paypal Account. The various

9    payments were for food, UPS, pay-by-phone for parking, FedEx for office expenses, moving

10   boxes from office space, gas, food, and ride on Bart, one payment for a ticket and membership in

11   networking group for my food at festival to Andrew Wheeler.

12       14.     On August# 21, 2014, a payment was made of $300, check no. 1004 to San

13   Francisco Water, Power & Sewer to keep the water on in my apartment.

14       15.    On August 21, 2014, a payment was made in the amount of $325.00, check no.

15   1002, to the Office of the United Trustee for my bankruptcy account, 713-14-30381.

16       16.    On August 22, 2014, check no. 1005 was payable to Lindsay McKesson. I paid

17   Lindsay McKesson $500, who was an attorney intern in my office, a stipend for work on pre-trial

18   matters in Oliverez v. County of Sonoma, Case No: CV 13-1918-CRB (ND), for the week appx.

19   August 18, 2014 – August 22, 20014.  Ms. McKesson also worked on other matters during that

20   period, including, but not limited to organization of files in the office.

21       17.    On August 28, 2014, check no. 1001 in the amount of $285.00 was paid to

22   Superior Court, City and County of San Francisco, for a cross-blocking driving citation reference

23   no. E0024036.  This was done while going to work on a case.

24       18.    On August 4, 2013, I made a withdrawal of $100 for food and gas in Los Angeles

25   as part of a business trip.

26       19.    On August 19, 2014, check no. 1613, was paid to me in the amount of $5,000.

27   $1500 of this amount was paid to Jim Blocko to assist me in my move from my old office

28

**DECLARATION OF WAUKEEN Q. McCOY IN RESPONSE TO OSC**
Case: 14-30381    Doc# 190    Filed: 03/02/15    Entered: 03/02/15 20:04:55    Page 4 of
10

location to my new office space.  As part of the joint tenancy, I paid the Wells Fargo mortgage with the remaining $3,500.00.

20.     On August 22, 2014, check no. 1596 was paid to Stephanie Zimmerman. I paid Stephanie Zimmerman $500, who was an attorney intern in my office, a stipend for discovery work in the <u>Cheryl Costa v The Meadows</u>, American Arbitration Case No. 74-160-00631113, for the week appx. August 18, 2014 – August 22, 2014, and assisting in discovery matters in <u>Oliverez v. County of Sonoma</u>, Case No: CV 13-1918-CRB (ND).  Ms. Zimmerman also worked on other matters during that period, including, but not limited to organization of files in the office.

**SEPTEMBER 2014 MONTHLY OPERATING REPORT**

21.     I have submitted an amended executed September 2014 Monthly Operating Report.

22.     On September 2, 2014, there was a cash withdrawal of $800.  This payment went to Stephanie Zimmerman, for work during the week of August 25, 2014-August 29, 2014.  Ms. Zimmerman worked on the <u>Tonya Solesbee v. Inyo County</u>, (Eastern District of California), Case No: 1:13-cv-01548-AWI-JLT during this period. Ms. Zimmerman also worked on other matters during that period, including, but not limited to organization of files in the office.

23.     On September 17, 2014, there was a cash withdrawal of $800.  This payment went to Stephanie Zimmerman, for work during the week of appx. September September 8, 2014-September 12, 2014, 2014. Ms. Zimmerman assisted in discovery matters in <u>Oliverez v. County of Sonoma</u>, Case No: CV 13-1918-CRB (ND).  Ms. Zimmerman also worked on other matters during that period, including, but not limited to organization of files in the office.

24.     On September 19, 2014, there was a cash withdrawal of $800.  This payment went to Stephanie Zimmerman, for work during the week of appx. September September 15, 2014-September 19, 2014, 2014. Ms. Zimmerman assisted in discovery matters in <u>Oliverez v. County of Sonoma</u>, Case No: CV 13-1918-CRB (ND).  Ms. Zimmerman also worked on other matters during that period, including, but not limited to organization of files in the office.

DECLARATION OF WAUKEEN Q. McCOY IN RESPONSE TO OSC

25.     On September 2, 2014, check no. 1557, payable to me in the amount of $500.00, was for the dog handler Rodrigo Z. for taking care of my dog while I was on the pre-planned committed vacation from August 25, 2014 to September 1, 2014.

26.     On September 5, 2014, check no. 1558 was paid to Lindsey McKesson. I paid Lindsay McKesson $1000, who was an attorney intern in my office, a stipend for work discovery and pre-trial matters in Oliverez v. County of Sonoma, Case No: CV 13-1918-CRB (ND), for the week appx. September 1, 2014 – September 5, 2014. Ms. McKesson also worked on other matters during that period, including, but not limited to organization of files in the office.

27.     On September 5, 2014, check no. 1559 was payable to Stephanie Zimmerman. I paid $1,000, to Stephanie Zimmerman, an attorney intern for work during the week of appx. September 1, 2014 - September 5, 2014. Ms. Zimmerman assisted in discovery matters in Oliverez v. County of Sonoma, Case No: CV 13-1918-CRB (ND). Ms. Zimmerman also worked on other matters during that period, including, but not limited to organization of files in the office.

28.     On September 26, 2014, check no. 1583 was made payable to Art Vences, as a client reimbursement of consultation fee in the case of Vences v. County of Santa Clara, that did not go forward.

29.     On September 4, 2014, check no. 1003 in the amount of $750 was paid, as a business expense, to Dr. Carpenter, who was an expert witness in the case of Oliverez v. County of Sonoma, CV 13-1918 CRB.

**OCTOBER MONTHLY OPERATING REPORT**

30.     The initial October 2014 Monthly Operating Report was filed only with the summary page. As indicated above, I mistakenly printed only the Summary Page and not all bottom tabs on the excel spreadsheet forwarded to me by my accountant.

31.     On October 6, 2014, check no. 1003 in the amount of $600 was a business expense to Josh Reidt for the training of a client for six sessions.

32.     On October 7, 2014, check no. 1009 was written in the amount of $500 to Stephanie Zimmerman, as an attorney intern, for the period of September 29, 2014 – October 3, 2014. Ms. Zimmerman worked on the Cheryl Costa case, assisted with the Deposition of Dr.

6
DECLARATION OF WAUKEEN Q. McCOY IN RESPONSE TO OSC

Carpenter in the <u>Oliverez</u> matter and Ms. Zimmerman also worked on other matters during that period, including, but not limited to organization of files in the office.

33.     On October 15, 2014, check no. 1012 was written to Attorney Sharon Ceasar in the amount of $775 for drafting, research, and completing the Reply Brief in the <u>B. Scott v. Bet, Viacom</u> appeal (Los Angeles), Case No: BC517318.  At this time, Ms. Ceasar was unaware of my Bankruptcy filing in March of 2014.

34.     On October 17, 2014, I withdrew $200 cash.  I was relocating my office and paid for the delivery of used copier from Jim Blocko.

35.     On October 17, 2014, check no. 1014 in the amount of $2,000 was paid to Attorney Dwight Cooper for work during the period of October 6, 2014-October 17, 2014.  Mr. Cooper worked on the <u>Baskin v. Sweet Jimmies matter,</u> Case No: RG 13-676121 during that period, performing an investigation of the location in question and discovery.  Mr. Cooper also worked on the <u>Walker v. Neiman Marcus</u> matter, Arbitration Association no. 74-160-0053713, assisting in fact discovery.

36.     On October 20, 2014, check no. 1015 in the amount of $750, was paid to Attorney intern Yousef Totah, as a stipend for researching the issues in two of my open cases: <u>Oliverez v. County of Sonoma</u> and <u>Matt Budgell v. Sterling Mets Organization,</u> Case No. 30-2014-00739986 (Superior Court, Orange County).  This check covered the period of October 6, 2014-October 10, 2014.

37.     On October 22, 2014, check no. 1019, was paid to Attorney intern Yousef Totah in the amount of $750 as a stipend for performing research on both <u>Oliverz v. County of Sonoma</u> and <u>Matt Budgell v. Sterling Mets Organization</u> matters.  This payment covered the time period of October 13, 2014-October 17, 2014. Mr. Totah also worked on other matters during that period, including but not limited to organization of files in the office.

38.     On October 25, 2014, check no. 1021, $750 was paid as a stipend to Attorney intern Yousef Totah for drafting a Response in the <u>Sterling</u> case, coordinating the discovery and researching the guidelines for restricted list players in the <u>Matt Budgell v. Sterling</u> matter.

39.     On October 10, 2014, as far as I can recall, I was in preparations to move my office to another location – from Market Street to Montgomery Street. I took out $1,500 as a cash withdrawal to assist in the move, purchasing boxes, wrapping paper.

**NOVEMBER 2014 MONTHLY OPERATING REPORT**

40.     The initial November 2014 Monthly Operating Report was filed only with the summary page. As indicated above, I mistakenly printed only the Summary Page and not all bottom tabs on the excel spreadsheet forwarded to me by my accountant.

41.     On November 4, 2014, check no. 1022 in the amount of $750 was written to Attorney intern Yousef Totah for researching the MLB (Major League Baseball) appeals process, writing a memorandum of points and authorities related to the restricted player list and conduct of players in the case of Budgell v. Sterling Mets. This payment covered the period of October 27, 2014 – October 31, 2014. Mr. Totah also assisted in the organization of files in the office and the move to the new office location.

42.     On November 7, 2014, check no. 1025, $750 was paid to Yousef Totah for research and drafting of a memorandum of points and authorities on MLP arbitrations related to restricted list players and performed other law and motion research related to Budgell v. Sterling Mets. This payment covered the period of November 3, 2014 – November 7, 2014.

43.     On November 12, 2014, check no. 1024, I paid the United States Trustee $650.00 for my Bankruptcy case, as required.

44.     On November 14, 2014, check no. 1027 in the amount of $2,000 was paid to Attorney Dwight Cooper for work during the period of November 10, 2014-November 14, 2014. Mr. Cooper worked on the Baskin v. Sweet Jimmies matter, Case No: RG 13-676121 during that period, performing an investigation of the location and discovery. Mr. Cooper also worked on the Walker v. Neiman Marcus matter, Case no: Arbitration Association no. 74-160-0053713, assisting in fact discovery.

45.     On November 1, 2014 (posted November 18), check no. 1007 from account ending in 6428, was paid to Josh Reidt, as a business expense - a baseball trainer for a client.

## DECEMBER 2014 MONTHLY OPERATING REPORT

46.    I am filing an amended December 2014 Monthly Operating Report that will be signed. I will also attach all corresponding bank statements referred to.

47.    Paypal purchases totaling $1,505.99. The breakdown is a follows for the paypal purchases: Payment to google for service, $5.99, payment for new copier to Copier Network, $500, and $1,000 to Ian Woodward for 4 day business trip for lodging in condo complex.

48.    On December 1, 2014, check no. 1027, from account 6428, I made a payment to my current office space landlord Workin Curran LLP for the December rent in the amount of $2,472.00.

## OTHER LARGE UNEXPLAINED EXPENSES

49.    On August 14, 2014, I made a deposit in the amount of $1500 for the rental of an RV for a pre-planned committed vacation from August 25, 2014 through September 1, 2014. Approximately $965.25 of the deposit was returned on September 11, 2014 to the Wells Fargo 6436 account. The amount of $5,783.00 was paid for the RV, however, $2,500 was paid toward the RV by family friend for his portion. I am not and was not aware if I can take a vacation. I could not find it in the Bankruptcy Guidelines. I will follow such guidelines in the future, if they exist.

50.    In September 2014, I took four (4) interns to a San Francisco 49ers Game and paid a total of $1,012 for 4 tickets. I am a certified NFL, NBA, FIBA Sport Agent and attending games, watching talent, and recruiting is part of business development. However, if this action is prohibited by the Bankruptcy Guidelines, I will follow such guidelines, if instructed by this Court.

51.    On September 25, 2014, I purchased tickets in the amount of $224, as client development to attend a musical. Actually, StubHub owes the money back as I bought our tickets to late to attend and I have been trying to get that credited back to the account. However, if this action is prohibited by the Bankruptcy Guidelines, I will follow such guidelines, if Court directed.

52.    On October 20, 2014, I took four (4) interns to a San Francisco 49ers Game and paid a total of $999.20 for 4 tickets. I am a certified NFL, NBA, FIBA Sport Agent and attending

Case: 14-30381    Doc# 190    Filed: 03/02/15    Entered: 03/02/15 20:04:55    Page 9 of 10

games, watching talent, and recruiting is part of business development. However, if this action is prohibited by the Bankruptcy Guidelines, I will follow such guidelines, if Court directed.

53.    On November 7, 2014 I paid $850 and on November 13, 2014, I paid $450 to take two prospective clients to Warriors games, as part of client development. . I am a certified NFL, NBA, FIBA Sport Agent and attending games, watching talent, and recruiting is part of business development. However, if this action is prohibited by this Court and by the Bankruptcy Guidelines, I will follow such guidelines, but it will harm my ability to conduct ordinary business.

54.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 2nd day of March, 2015.

_____
WAUKEEN McCOY
Debtor in Possession